### CRAWFORD *v.* MAYOR AND COUNCIL OF GRIFFIN,
### and *vice versa.*

Where upon the trial of an action for damages against a city, for physical injuries alleged to have been caused by a defective bridge, it appeared from the evidence submitted in behalf of the plaintiff that the bridge in question extended from the street to the sidewalk over a drainage ditch, not at a regular public crossing or street intersection, and was built solely for the convenience of an owner of abutting land, and was not in general use by the public and was of no public utility: *Held*, that the granting of a nonsuit was proper, although it further appeared that prior to the plaintiff's injuries the city, after taking up the bridge for the purpose of deepening the ditch, had replaced the same and had subsequently made some repairs upon it, and that some of the public used it.

Argued April 9, — Decided May 23, 1901.

Action for damages. Before Judge Hammond. City court of Griffin. December 3, 1900.

*Searcy & Boyd* and *M. W. Beck*, for plaintiff.
*Lloyd Cleveland*, for defendant.

FISH, J. Martha Crawford sued the Mayor and Council of the City of Griffin for damages for personal injuries alleged to have been received by her, by reason of the breaking of a rotten plank in a bridge over which she was walking in such city. The court granted a nonsuit, to which ruling the plaintiff excepted. From

the evidence submitted in her behalf, it appeared that the bridge in question was not situated at a public crossing nor at the intersection of streets, but was located opposite the garden gate of Mr. Mills, and extended from the street to the sidewalk over a gutter or ditch for drainage, and was built solely for the convenience of Mr. Mills in hauling manure into his garden. He furnished a part of the lumber for the construction of the bridge, but it did not appear who built it or caused it to be built. Some four or five years after its erection it became necessary to deepen the ditch under the bridge for drainage purposes, and to do this the bridge was removed by the hands working the streets of the city, and, when the ditch had been deepened, was replaced in its original position by such hands. It appeared that the street hands subsequently repaired the bridge, but how often or in what manner was not shown. Plaintiff was a servant of Mills, and in going to his house she left the sidewalk on the opposite side of the street, some forty or fifty feet below the bridge where she was hurt, and followed a path leading diagonally across the street to the bridge, and while walking over it one of the planks thereon, which was rotten, broke, causing her to fall and to fracture her leg. The plaintiff testified: "I have seen people cross the bridge. There was a path going across the bridge. . . It was a path that people walked across the bridge from the sidewalk to the street. I have seen people walk across there. . . It was my regular way of passing. . . As to persons who cross that bridge, I saw Clara Baker and Tena cross there. They came over there often. I don't know how often they crossed it. They work often at Mr. Mills's. They cross frequently. I saw the Hardaman girl, Mrs. Mills's chambermaid, cross there. I have seen others. I thought it was a regular crossing. I have seen people passing it all the while. . . More use it than those who come from Mr. Mills's house; whether it was a public crossing or not, they used it anyway; . . they used it as a public crossing; it is in the public street. The bridge is across a gully between the sidewalk and the street." Plaintiff proved her earning capacity before and after her injury, her age, and that she suffered much physical pain.

Under the proof submitted there was no error in granting a nonsuit. A city is not bound to maintain bridges across gutters and drainage ditches running along the edges of sidewalks, except at

regular public crossings or the intersection of streets.  Elliott, Roads and Streets (2d ed.), § 621; McCarthy v. Oshawa, Upper Can. Q. B. 245.  The general use of a bridge by the public as a part of the common highway, and its public utility, are necessary to constitute it a public bridge.  4 Am. & Eng. Enc. L. (2d ed.) 920.  The bridge in question was not at a regular public crossing, nor at the intersection of streets; it was no part of the street or sidewalk, nor was it shown to be in general use as such, or of any public utility.  It was a mere private bridge, built solely for the convenience of an individual.  It was not shown that the city built it.  The mere fact that the city took it up and replaced it and made some repairs upon it did not constitute it a public bridge.  The city being under no duty to keep up the bridge, its failure to do so was not negligence, and the plaintiff could not recover.  The cases cited by plaintiff in error are not in point.  In *Rome* v. *Dodd*, 58 *Ga.* 238, the record shows that the ditch was across a sidewalk and the bridge a part of the sidewalk.  In *Town of Belton* v. *Vinton*, 73 *Ga.* 99, the bridge was over a gully running across the street and formed part of the public street.  In *Mayor etc. of Griffin* v. *Johnson*, 84 *Ga.* 279, the bridge through which the plaintiff fell was on a public sidewalk, and consequently a part thereof.  *Bentley* v. *Atlanta*, 92 *Ga.* 623, was an action against the city for permitting a railway company to erect a bridge at a street crossing, and to maintain it, together with the approaches thereto, in such a manner as to render the same a public nuisance.  The court held that under such circumstances the city would be liable for the consequences, just as it would if the improper work had been done by the city itself.  We think it quite clear that the judgment of the court below should be

*Affirmed.  Cross-bill of exceptions dismissed.  All concurring.*