MRS. VINA HARDIN, *et al.* v. CITY OF CORINTH.

[62 South. 6.]

MUNICIPAL CORPORATIONS. *Streets. Bridges. Liability.*

Where a city constructed a bridge over a drain, gutter or ditch between the street and the sidewalk, not at the intersection of two streets, but for the use and convenience of the public in going from the street to the sidewalk, and such bridge was so used by the public, it was liable to persons injured by its defective condition, for while not required to build such a bridge it had the power to do so, and having built the bridge it was required to keep it in such reasonable repair as to insure the safety of persons rightfully using it.

APPEAL from the circuit court of Alcorn county.

HON. J. H. MITCHELL, Judge.

Suit by Mrs. Vina Hardin and others against the City of Corinth. From a judgment for defendant, plaintiff appeals.

*W. J. Lamb,* for appellants.

It is not disputed in this case that W. A. Hardin, deceased, was injured on one of the public streets of the city of Corinth, and that the injury caused his death. The bridge which broke through and caused his injury and death was one which leads from the street across a ditch to the sidewalk in front of the house of James Carter. The bridge was placed across the ditch by the city authorities and by the direction of the Mayor of the city.

The contention of the appellee is that, because this bridge was not at a public crossing and because it led from the street to the sidewalk in front of a private home, the city was under no duty to keep it up and was not liable for any injury caused because of the defective condition of the bridge; and this is the view that the trial court took of the matter and gave a peremptory instruction for the appellee. The appellee offered no evidence, and it is conclusively shown and not disputed that the bridge was defective and that the city had actual notice of its defective condition and had been asked to repair it but refused to do so, and there is nothing in the record suggesting any contributory negligence on the part of the deceased.

Was W. A. Hardin injured on one of the public streets of the city of Corinth? What, in law, does the term "street" include?

"The term street in ordinary legal signification included all parts of the way, the roadway, the gutters and the sidewalks." 1 Elliott on R. & S. (3d Ed.), page 26, Sec. 23; *Little Rock* v. *Fitzgerald,* 28 L. R. A. 499; *Frankfort* v. *Coleman,* 65 Am. St. Rep. 415; *Tabes* v. *Grafmiller,* 109 Ind. 206; *Kokomo* v. *Mahan,* 100 Ind. 246; *Kohlhoh* v. *Chicago,* 85 Am. St. Rep. 335.

Now the question which first arises is, what is the duty of the city to the public in maintaining its streets and sidewalks? There is no contention on the part of the ap-

pellee that this bridge was on private property but was on the property of the city, each and every part and parcel of it was on the property of the city.  It is the universal doctrine held by all the courts that ''Public highways belong from side to side and end to end to the public.''  2 Elliott on R. & S. (3d Ed.), Sec. 828, page 253; *Nesbitt* v. *City of Greenville,* 69 Miss. 29; *Carver* v. *City of Jackson,* 82 Miss. 587; *Caldwell et al.* v. *George,* 50 So. Rep. 631; *Dill* v. *Board of Education,* 47 N. J. Equity, 421; *First Nat. Bank* v. *Tyson,* 91 Am. St. Rep. 52; 2 Jones on Negligence of Municipalities, Sec. 77; 28 Cyc., page 1341; *Whitfield* v. *Meridan,* 66 Miss. 570; *Bell* v. *West Point,* 51 Miss. 262.

The city had ample time in which to repair this bridge after it had notice of its condition, for something over a year intervened after it was notified by Carter of its condition before the injury occurred to the deceased.

''A municipality being responsible only for reasonable diligence in making repairs or removing obstructions after it has notice of the unsafe condition of the street, it must appear that it had such notice a sufficient length of time before the injury to afford a reasonable opportunity to act in the premises, the degree of celerity depending on the attendant circumstances, such as the location of the street, the volume of travel over it and the like.''  28 Cyc., page 1362.

Under the facts in this case, we submit that the bridge was placed across the ditch by the city itself, but had it been placed there by Carter, this would not relieve the city from liability.  2 Elliott on Roads and Streets, (3d Ed.), page 190, Sec. 790; 28 Cyc., page 1352.  If the bridge was placed across the ditch by Carter and for his own benefit, this does not relieve the city from liability. 28 Cyc., page 1354.  No one can question the right of the deceased to be where he was at the time he was injured.

''Any person injured by a defect in a highway while he is lawfully there and using it for these purposes for

which there is a municipal duty to maintain it in a reasonably safe condition may recover damages for the injury so resulting. This liability is declared without regard to the purpose with which the person goes upon the way, whether he happens to be there out of idle curiosity or in pursuit of business or pleasure, sometimes upon the theory that he need not be a traveler, and sometimes because such purpose is not inconsistent with his presence on the street as a traveler, the particular purpose being immaterial if he is there as a traveler.'' 28 Cyc., page 1415.

We do not question the right of the city to make the ditch it made, but we do contend that, in doing so, it must use reasonable care and precaution to prevent injury to travelers along the street. 28 Cyc., page 1382.

The digging of the ditch and putting the bridge across it were the acts of the city, and the city alone is responsible for its neglect of duty and had actual notice of every defect. 28 Cyc., page 1387.

Was the city negligent in allowing this bridge to remain in its defective condition? We submit that as a matter of law it was negligent, grossly negligent. The appellants were at least entitled to have the jury pass on the question as to whether or not the city was negligent. *Meridian* v. *McBeath,* 80 Miss. 491.

The question of negligence is always a question for the jury, and in this case it was certainly for the jury to determine the question of the negligence of the city in leaving the bridge as it did leave it. *City Counsel of Augusta* v. *Trarpe,* 113 Ga. 152; *Enright* v. *City of Atlanta,* 78 Ga. 288; *City of Atlanta* v. *Milam,* 95 Ga. 135; Jones' Negligence of Municipal Corporations, Sec. 78; 16 Am. & Eng. Enc. (2 Ed.), page 440.

If there was any evidence that would justify a finding of the existence of the fact contended for by appellants, then the case should have gone to the jury. 28 Cyc., page 1500.

If there was any derelictions of duty on the part of the city shown by the proof, the case should then have gone to the jury. 28 Cyc., page 1509.

The only contention made by counsel for appellee in the court below is that the city is not liable for this injury because the bridge in question was not at the intersection of streets. Counsel do not deny that the bridge led from the street onto the sidewalk in front of the home of Carter, although it was on the street and not on private property, still the city owned the public no duty whatever to protect it from any harm that might occur because of this defective bridge. We do not think this contention sound, nor is it supported by a great weight of authority.

The appellee relies on the case of *Crawford* v. *Mayor, etc., of City of Griffin,* 38 S. E. 988, which is a Georgia case, to support its contention that it was the duty of the deceased to go to the intersection of the street crossing, and, because he did not go there but went across the bridge leading from the street to the sidewalk, which bridge was placed there by city authorities, there is no liability on the part of the city for this injury. We submit to the court that the case of *Crawford* v. *Mayor, etc., supra,* is not the law in Georgia, nor anywhere else. So far as we have been able to learn, after diligent investigation and search, the *Crawford case, supra,* is the only one which has been found which announced the doctrine announced in that case. At the same term of court in which the *Crawford case, supra,* was decided, the Supreme Court of Georgia decided the case of the *City Council of Augusta* v. *Tharp,* 113 Ga. 152, 38 S. E. 289, and we especially invite the court's attention to that entire case. *City of Atlanta* v. *Milan,* 95 Ga. 135, 22 S. E. 43; *Railway Co.* v. *Gibson,* 97 Ga. 498, 499, 25 S. E. 484; *Brunswick & W. R. Co.* v. *Gibson,* 25 S. E. 484. On this point there will be found a very lucid and correct enunciation of the law in 28 Cyc., page 1430.

The court will notice that in the above citation the law says that the traveler does not assume the risk from unnecessary defects or from obstructions and nuisances that are suffered to remain in the street through the negligence of the municipal authorities. This was certainly an unnecessary defect in this bridge and the authorities had allowed it to remain in the street in a defective condition after the city had known of its defective condition for a period of more than a year.

On the question of the right of a traveler to cross the street at points other than the intersection of street crossings the case of the *City of Denver, et al.,* v. *Sherrett,* 5 Am. Neg. Rep., page 520, gives a very lucid enunciation of the law on this point. Elliott, Roads & S. 622; *Moebus* v. *Herrmann,* 108 N. Y. 249, 15 N. E. Rep. 415.

The court in giving the peremptory instruction for the appellee in this case lost sight of the fact that the city authorities may, in the exercise of their governmental functions, adopt plans of having its streets graded and gutters and ditches cut where necessary; and, in coming to the question as to whether the city was guilty of negligence or not, it is necessary to consider this duty, and while the city undoubtedly has the right to have gutters or ditches cut in its streets and a danger inherent because of the plans adopted, then the city is not liable. But if the danger arises from the negligent construction or maintenance of its plans, it is liable and that in the condition in this case, to-wit: that the injury occurred because of the carrying out, in a negligent manner, of the plans adopted for the draining of that street in allowing the defective bridge to remain across the ditch after it had notice of its defective condition. We wish to call the court's attention to the opinion of the court in the case of *Gallagher* v. *City of Tipton,* 113 S. W. 674 and *Ely* v. *St. Louis,* 181 Mo. 733, 81 S. W. 168.

The grading of the street and the opening of the gutter by the city made it necessary to have a bridge across it

to get in and out of the property belonging to Carter. Wagner, street commissioner, says, "We had fixed it so he couldn't get in and we fixed it there." Asberry Smith, street commissioner, says he (meaning Carter) would either have jumped the ditch or gone up to the other crossing or down to the corner to have gotten on his premises if the bridge had not been put there.

. Now, we respectfully submit to the court that the city caused the condition that necessitated the building of this bridge and the city, recognizing this fact, caused the bridge to be built in both instances, both in front of the north house and subsequently had the same removed and placed across the ditch in front of the "south" house. And as the court said in the case of *Hutchins* v. *Inhabitants of Sullivan,* 2 Am. Neg. Rep., page 805.

"That when a sidewalk has been built, no matter by whom or what authority, and the municipal authorities have notice that it has become defective and dangerous to public travel, the municipality will be liable as though the sidewalk had been built by its express authority."

We respectfully submit to the court that it makes no difference whether the city put the bridge across the ditch, or whether it was put there by Carter, or whether the bridge was considered a part of the street or a part of the sidewalk, the city had known for more than a year of its defective condition, and, by being placed on one of the public streets, it gave invitation to the public to use the same, it was still the duty of the city to see that it was repaired or removed and by failing to do so became liable for any injury that might occur because of the defective condition of this bridge. In view of the authorities that we have cited in this matter to sustain our contention, we respectfully submit to the court that the court below erred in giving a peremptory instruction for the appellee and erred in overruling the motion of the appellant, asking for a new trial, and erred in sustaining the motion of the appellee to exclude the testimony and direct a verdict for it.

*Conn & Warriner,* for appellee.

This case does not seem hard to solve on principle, but we fail to find, after diligent search, where this question has been before our own court for decision. However, the question has been up for decision in some other jurisdictions, and we invite the court's consideration of the case of *Crawford* v. *Mayor, etc., of City of Griffin,* 38 S. E. 988.

Counsel for appellants says that the only contention made by counsel for appellee in the court below is that the city is not liable for this injury because the bridge in question was not at the intersection of streets. This is very nearly correct.

Our contention was and is that the city was not liable for the injury because it was not its duty to keep this bridge in repair; that the municipality owed the duty to the public to keep its streets and sidewalks in a reasonably safe condition for travel; that both the street and the sidewalk, as shown by the testimony, were in first class condition, with no dangerous obstruction, imperiling the life or limb or any one using either; that in so doing she had performed her full duty to the deceased as a member of the public, to provide a way from the street to the sidewalk in front of a private home, but rather than in order to make it the duty of the city to repair any bridge under its general duty to keep streets and sidewalks in a reasonably safe condition for travel, it must be shown that the bridge in question was either a part of the street or the sidewalk; otherwise, you are in the position of requiring the city to repair a bridge which is obviously and confessedly not a continuation of either street or sidewalk, under a power and authority extending only to streets and sidewalks. But counsel for appellant says there must be no dangerous obstructions in the street. True; but in this case there was no sort of contention that this bridge was an obstruction. The whole case was prepared and tried solely on the theory that it was the

duty of the city to repair this bridge and make it safe for use.

Counsel insists that "the public is entitled to the use of the street from side to side and from end to end," and that "this bridge was as much a part of the street as was the earth that formed the traveled way and the sidewalk." This "from side to side and end to end" doctrine has been applied by the courts as against encroachments on streets and sidewalks by private parties, as in the case of *Caldwell, et al.,* v. *George,* 50 So. Rep. 631, and as to dangerous obstructions in the streets, as in the case of *Nesbitt* v. *City of Greenville,* 69 Miss. 29, and was never intended to cover a case like the instant one. This is clearly the underlying idea in Elliott on R. & S. (3d Ed.), Sec. 828, first cited by counsel for this "side to side end to end" doctrine, as a casual reading of the section will disclose. Counsel for appellant will not seriously contend that in this state the law is that, because a private person is not allowed to appropriate any part of a public street and because no one, not even the municipality itself, can erect a dangerous obstruction anywhere in a public street so as to endanger those using it, or any part of it, it must follow that it is the duty of the city of Corinth to build private bridges across the gutter in front of every man's gate within the corporate limits and to keep the same in repair. But this is the logical and inevitable limit to this doctrine, if it can be stretched to cover Carter's bridge; for she owes no greater duty to him than to any other of her citizens. But he says the city ought to have taken the bridge away from there, repaired it, or made Carter take it away. It was never charged that this bridge was an obstruction that ought to have been removed; but the city was charged with neglect of duty for not repairing this bridge, an entirely different proposition. It is further contended that if the city did not see that the bridge was kept in a safe condition for the public to cross it, then it is liable for neg-

lect of duty. This later proposition is the only question which this court is called upon to decide, and we submit that the "public" has absolutely no interest whatever in the little bridge in front of Carter's gate; it could be taken away by Carter at any time he might see fit and no member of the public would stultify himself by complaining to the municipal authorities that Carter had removed the bridge from the gutter in front of his gate. Neither could the city itself complain for both the street and the sidewalk would be in perfect condition if it were taken away. No damage would be done to either street or sidewalk. Not so of any public bridge. It must follow that if this bridge could be removed by Carter, *ad libitum,* it was a bridge in which the public has absolutely no interest whatever, and there could be no sort of duty resting on the city to keep it in repair. But we are advised that the city could have made Carter take it away. Why should we have had Carter take it away? It was not charged that this bridge was an obstruction in the street until the cause reached this court.

Counsel for appellants further criticising the contention of counsel for appellee in the trial court, that it was not the duty of the city to repair this bridge, claims that our position is not supported by authority or by reason, stating that reliance is had on *Crawford* v. *Mayor, etc., City of Griffin,* cited *supra.* He is correct in saying that we have relied confidently on this case; for we did in the trial of this case in the court below and we continue to do so here and now although counsel boldly declares that the doctrine announced in the *Crawford case* is not the law in Georgia, nor anywhere else. The facts in this case are plain and the utterances of the court are clear and unambiguous, and we fail to find where the court has ever taken back what it said was the law in this case, so we are forced to conclude that in Georgia, at least, it is not the duty of a municipality to repair a private bridge, such as is here in question.

To overthrow the *Crawford case*, counsel cited another Georgia case, *Augusta* v. *Tharp*, 38 S. E. 389, decided at the same term as the *Crawford case* only a few months earlier in the term, which case we will not here review. But we will say that in this latter case, the *Tharp case*, the question was squarely one of obstruction and not of duty to repair, a different proposition entirely, a question evidently recognized by the court which rendered both of these opinions.

The *Tharpe case* is clearly not in point, and the same is obviously true of the case of *Brunswick & W. R. Co.* v. *Gibson*, the other Georgia case reported in 25 S. E. 484, and of the case of *City of Denver, et al.*, v. *Sherrett*, 5 Am. Neg. Rep., page 520, also cited by counsel.

Counsel says that the doctrine announced in the *Crawford case*, cited *supra*, was not the law in Georgia or anywhere else; but the doctrine announced in the *Crawford case* has not been modified by the court that rendered it, and there are other courts which are exactly in line with the Georgia court. *Fortune, et al.*, v. *City of St. Joseph*, I. S. W. Rep. (Mo.) 287.

In the note at page 672 of 2 Am. & Eng. Ann. Cases, there are a number of Maine cases cited supporting our contention. It was held in the case of *Brown* v. *Inhabitants of Showhegan*, — Me. —, 19 Atl. Rep. 399; *Philbrick* v. *Pittston*, 63 Me. 477; *Leslie* v. *Lewiston*, 62 Me. 468; 2 Elliott on R. & S. (3d Ed.), Sec. 800, page 209.

We have been unable to find any court or textwriter that disproves the doctrine announced in the *Crawford case*, and we challenge counsel to show this court in his rejoinder brief a single authority of any kind that holds it is the duty of the municipality to keep in repair bridges over gutters along the curb at any other point than at regular crossings. We confess our own inability to find any such law anywhere.

We confidently assert that the law as announced in the *Crawford case* is the accepted doctrine on this subject

wherever the doctrine has been presented for adjudication, and we believe the law is founded on sound reasoning.

But it is contended in this court by counsel that the bridge was an obstruction in the street, which would render the city liable for the death of Mr. Hardin; or rather we infer that this is his contention, from the fact that so much of his argument is addressed to the question of unlawful obstruction of streets and has nothing to do whatever with the matter of keeping private curb bridges in repair. If such is his contention, our reply is that this case must be tried here by the record made in the trial court. No such contention is presented·by the record and therefore that phase of the question is not before this court and cannot possibly be considered; for, to do so, would be to leave the record and try the case that might have been presented. We concede that a private bridge across a gutter might be of such character, when first constructed, or might be allowed to get in such condition for want of repair as to render dangerous the use of the street or the sidewalk, and if the question of a municipality's negligence for allowing it to so remain, after due notice, were presented to the court it would be a proper question for the jury to decide under proper instructions from the trial court, and a peremptory charge would be improper. But no such case was presented; for the only question presented was as to the duty of this appellee to keep this bridge in proper repair for use. Here is no question of obstruction regarding the use of the street or making the sidewalk dangerous.

But it is contended by counsel, and effort was made to prove, as shown by·the record, that this appellee built this bridge and therefore that it was its duty to keep it in safe repair and fit for use, even though not a public bridge. Our reply to this proposition is that the duties of municipal officers are fixed for them by law, and the responsibility of the city for the acts or omissions of its

officers and agents is determined by law and can neither be enlarged or lessened by the whim or caprice of the officers themselves. This bridge was in no sense a public bridge, and if any municipal officer, agent or servant used public money to build this bridge, he did not and cannot thereby estop the city from pleading the fact that in so doing he, or they, acted without authority or law, when sued, as in this case, for injury resulting from the condition of said structure. To hold otherwise would be to hold that a wrong once perpetrated on the city carried with it the obligation on the part of the city to perpetuate that wrong. This doctrine of estoppel is sometimes applied to private corporations and they are not allowed to plead the acts of their officers and agents as being *ultra vires;* but no such doctrine is applied to the governmental corporations in the performance of their governmental functions. See Sec. 597, Elliott on Roads and Streets (3d Ed.), the last sentence of which section is: ''The act of the (municipal) officers is the act of the corporation only when done within the general scope of the authority expressly or impliedly conferred upon the municipality.'' And it may be just as truly said that the result of the negligence of city officials can be visited upon the municipality only when they have been negligent about the performance of the public duty. It seems to us not even good nonsense to contend that it was the duty of the city of Corinth, of the whole corporation, to build Jim Carter a bridge across the gutter in front of his gate, although this gutter may have been twenty inches deep and twenty inches wide, as contended for by counsel, and made by the city itself when grading its streets in front of this property. If Carter's property had been damaged by the grading of this street, it gave him no right to demand a bridge for his private use. If he had been injured by this grading, his recourse was a suit for damages therefore against the city if they could not have agreed on the amount of such damages without a lawsuit.

The *Nesbitt case* and the *Carver case* and the *Caldwell case* all of which have been pressed upon the attention of this court by counsel, are all of them foreign to the question at issue in the case at bar and can throw no light on the solution of this case. The *Nesbitt case,* with which the court is familiar, is not at all in point for the reason that the question therein presented was one of obstruction, of allowing a large structure in the streets, which the jury might have found to have been allowed to remain in the street by the municipality as actionable negligence, if the injury resulted therefrom. Of course, as against such an obstruction the public has a right to use all parts of the streets and have the right to expect that the municipal authorities will not have the right to expect that the municipal authorities will not endanger the lives of any of the public anywhere in the street by allowing a dangerous structure therein. But we fail to see how this proposition can possibly aid the court in solving the question as to whether or not it is the duty of the municipality to keep in safe repair and condition to be used, a bridge across a gutter, not at a regular crossing.

In the *Carver case,* the temporary bridge across the ditch was a part of the regular sidewalk and intended for a continuation thereof. The case undoubtedly was decided correctly but we cannot figure out how the law, as announced in this case as applied to a bridge which was a part of the sidewalk can be tortured into supporting the contention that this appellee is guilty of negligence when it failed to keep in repair a private bridge across the gutter and not in any sense whatever a part of the sidewalk proper; for it could have been entirely removed and not have affected either the street or the sidewalk in the smallest degree whatever.

Neither is the *Caldwell case* at all in point. As against a private person making encroachments upon the streets, the public has the absolute right of free access to every

part and parcel of the public street. How the announcement of this proposition can help this court to decide whether it is the duty of the municipality to build or keep in repair bridges over gutters in front of private residences and not at regular street crossings, we are entirely unable to comprehend. If the question of dangerous obstruction were before the court, the case might be different; but the only question that is before this court is: Did this appellee fail in its duty to the public when it failed to repair this curb bridge in front of Carter's residence so as to render it safe for use by the public, said bridge not being at a regular street crossing.

To our mind the question is simple and easy of solution. Upon the record, there is but one question and that the one of law with which the jury could have nothing to do, and having been decided against appellants by the trial court, there was but one thing for him to do and that was to instruct peremptorily for defendant. In doing so, we submit he committed no error and we respectfully ask this court to affirm the judgment of the court below.

. COOK, J., delivered the opinion of the court.

It seems in this case that the city of Corinth had laid a bridge three or four feet wide over a drain, gutter, or ditch alongside one of the public streets of the city. This drain formed no part of the sidewalk, but properly speaking it was a part of the street. The bridge was unsound and unsafe, and this was known to the officers of the city. Mr. Hardin, in going from his wagon to the residence of a citizen, for the purpose of delivering some produce, stepped upon a decayed plank in the bridge, which broke and injured him—the injury ultimately causing his death. It will be noted that the bridge was not a crosswalk at the intersection of two streets, but evidently was built by the city for the use and convenience of the public, who desired to go from the street to the

sidewalk beyond, and from the record it appears that the public made use of this bridge for this purpose. At the close of the evidence, at the request of the city, the trial court peremptorily instructed the jury to find a verdict for the city.

It is argued that the city was under no obligation to build the bridge at this point, and in doing so exceeded its powers. *Crawford* v. *City of Griffin,* 113 Ga. 562, 38 S. E. 988, is cited in support of this contention. In that case it is not shown that the city built the bridge in question. It is shown that the bridge was built solely for the convenience of Mr. Mills, the owner of the abutting property, in hauling the manure into his garden, and that the plaintiff was the servant in the household of Mr. Mills. It was not shown in that case that it was a public bridge, or that the city had anything to do with it, except four or five years after its erection it became necessary to deepen the ditch under the bridge for drainage purposes, and to do this the bridge was moved by the hands working the streets of the city, and, when the ditch had been deepened, was replaced in its original position by such hands, and that subsequent to this the street hands repaired the bridge. This case was probably correctly decided, and must be read in connection with its facts.

In the present case the city constructed the bridge, and it was constructed on the street, and it was evidently intended for the use of the general public—pedestrians going from the street to the sidewalk. It is unnecessary to hold that the city was under a duty to build the bridge, as it must be clear that they were empowered to do so. In fact, it would seem that the city was doing the proper thing when it built the bridge. It is especially true that the public are entitled to the use of the highway from end to end and from side to side, where the highway is a street—an urban highway. In the very nature of things the public cannot be confined to the beaten paths. There is usually, in the cities of the size of Corinth, no reason

why pedestrians should not cross the streets elsewhere than at the intersection of streets, and when a city builds a bridge for the use of pedestrians, and thereby invites them to use same, we can see no sound reason why the city is not under obligation to keep the bridge in reasonable repair, to insure the safety of all persons rightfully using same.

*Reversed and remanded.*