## CITY OF MERIDIAN *v.* PETERSON.

[95 South. 625, No. 23134.]

1. MUNICIPAL CORPORATIONS. *Crossings over gutters or ditches other than public crossings over street intersections must be kept in reasonable repair.*

   A municipality is not required to maintain bridges or crossings over gutters or ditches made for draining the streets at other places than the regular public crossings or street intersections, but when a municipality constructs a bridge over a gutter or ditch for draining its streets at places therein other than street intersections, thereby inviting the public to use the same in crossing the street, such bridge must be kept in such reasonable repair by the municipality as not to endanger persons crossing it.

2. MUNICIPAL CORPORATIONS. *Municipality under no obligation to maintain or repair private bridge over ditch in street unless used by general public.*

   An abutting property owner has the right to construct a bridge over a ditch in a street in front of his premises in order to obtain access thereto from the street, provided it is constructed in such way as not to interfere with the rights of the public; but when such a bridge is constructed by an abutting owner the municipality is under no obligation to maintain or repair it, unless it is of utility to and used by the general public.

3. MUNICIPAL CORPORATIONS. *Directing verdict for municipality for injuries on privately constructed bridge over gutter in street held proper, where of little public utility.*

   Whether the utility to, and the amount and character of the user by, the public generally of a bridge built by a private person over a drain in a street in a municipality are sufficient to cast upon the municipality the duty of repairing the bridge are questions of fact usually for the determination of the jury in an action against the municipality for damages caused by a defect in the bridge; but where it is manifest from the evidence that the bridge is of little public utility, the jury may be directed to return a verdict for the municipality.

APPEAL from circuit court of Lauderdale county.

HON. J. D. FATHERREE, Judge.

Action by Mrs. Ida Peterson against the City of Meridian. From a judgment for plaintiff, defendant appeals. Reversed, and judgment for defendant.

*Amis & Dunn,* for appellant.

The principal question is whether where a footbridge is constructed by some private person not at a public crossing, without the authority of the city, over a public drain way in a street between the sidewalk and the traveled way in the street, and has been used for many years by persons in passing from the traveled way in the street to the sidewalk, the city may be held, as for negligence in failing to maintain and keep such bridge in a good state of repair, to a person who is attempting to use such bridge in the nighttime and is injured by reason of a defect which has existed in such bridge for a long period of time.

The case of *Crawford* v. *The City of Griffin,* 113 Ga. 562, is almost a parallel on its facts to the case at bar. In that case the bridge in question was constructed by a private person; but it appears from the reported facts that the city had taken up the bridge for the purpose of deepening the ditch, had replaced the same and had subsequently made some repairs upon it, and that some of the public used it. By reason of a defect in the bridge the plaintiff's intestate was injured while attempting to use the bridge in going from the street to the private adjacent property. Recovery was denied on the ground that the bridge was not located at a public crossing, was not constructed by the city and that the city was under no duty to keep the same in repair, even though some of the public used it, because it was not at a public crossing. In the case here the city did not construct the bridge, had never repaired it, and had never done anything in recognition of its existence as a public way across the drainage ditch in the street. In this respect the case differs on the facts from the Georgia

case.   The bridge was located midway a block, and in the very nature of things could not have been considered a public utility over which the city exercised jurisdiction. The failure of the city to take cognizance of the existence of the bridge, how so ever long continued, could not impress it with the character of a public utility, even though it were used generally by persons in that vicinity in passing from the street to the sidewalk.

It was contended in the court below that this court had declined to follow the rule announced in the case of *Crawford* v. *The City of Griffin, supra,* in the case of *Hardin* v. *The City of Corinth,* 105 Miss. 99.   But it seems to us, on the contrary, that the court clearly recognized the soundness of the rule stated in *Crawford* v. *The City of Griffin,* and would have followed it in the Corinth case had the facts of the two cases been similar.

In 4 R. C. L., page 232, it is stated: "An individual cannot by erecting a bridge within the limits of a city impose upon such city the burden of keeping it in repair, or constructing approaches. Until the city assumes control over a bridge erected without its assent or authority, it is not liable for its not being kept in repair." Citing *Joliet* v. *Verley,* 35 Ill. 58; *Com.* v. *Charlestown,* 1 Pick. (Mass.) 180; *Green* v. *Bridge Creek,* 38 Wis. 449.   In the opinion by the court in *Commonwealth* v. *Charlestown,* the court said: "But we think it cannot be true that a bridge or road recently built or laid out without any authority, can impose any obligation on the inhabitants of the town where it may be.   This would be to encourage individuals to act from their own authority in such cases, and to punish others for any imperfect execution of their work."

The city of Meridian was under no legal obligation to construct a bridge at the point where the bridge in question was located.   It had not in fact done so.   No fact from which an implied acceptance of the bridge on the part of the city as a public crossing appears in the record.   While it has been held by this court (*Brahan* v. *Meridian Light & Railway Company,* 121 Miss. 269), that

it was not negligence for a person to cross the street direct
ly in front of her house instead of going to a street crossing
and then going down the sidewalk on the other side, in
nowise conflicts with the rule for which we are contending;
nor does it by inference require a municipality to so con-
struct streets and sidewalks as to render them passable by
pedestrians attempting to cross at any or all points. The
right of a city to construct drainways and to erect or to
permit the erection of obstructions in certain portions of
the street not needed for public travel is undoubted, and
this court has so held in the case of *Gulfport and Missis-
sippi Coast Traction Company* v. *Manuel,* 85 So. 308.

The city of Meridian had the right in the improvement
and maintenance of the street to construct and to keep open
a ditch for drainage purposes between the intersection and
crossings of the streets with other streets.   There is no
complaint or proof that the city was guilty of any negli-
gence in this regard.

It was contended in the court below that even though
the city did not construct the bridge, that if it had been
used constantly and regularly by the public for a number
of years, and that during said time the said bridge ap-
peared to be a portion of the street intended for public
use, and that the city authorities had knowledge of such
use of the bridge, that it was the duty of the city to main-
tain and to keep in such state of repair as that it might be
used with reasonable safety for such purposes; and that
if it failed to do so, it was guilty of negligence.   And the
court so instructed the jury on behalf of the plaintiff.
This contention is palpably unsound and the court erred
in instructing the jury that it was the city's duty under
such circumstances to keep the bridge in repair. *Stain-
back* v. *The City of Meridian,* 79 Miss. 447.

We insist that the court erred in refusing to grant the
peremptory instruction to find for the defendant as re-
quested.   The material facts in evidence, it seems to us,
are undisputed, and fail to show any liability on the part
of the defendant city to the plaintiff.   However, if we are

mistaken as to this, it certainly was error on the part of the court to grant instructions requested by the plaintiff to which we have heretofore called attention and especially to have refused the only other instruction requested by the defendant. To require a city to do more than to maintain reasonably safe sidewalks on each side of the street, and reasonably safe cross-walks at intersections of streets for the use of pedestrians is going far beyond reasonable limits. To require cities to keep the drain ditches located within the streets outside of the traveled way covered or bridged, so as that a pedestrian might conveniently pass from one side of the street to the other at any point, would require the doing of an impossible thing.

We therefore submit that the verdict of the jury was for an excessive amount and resulted from sympathy and not from an unbiased and deliberate consideration of the evidence as to the extent of the injury sustained by the plaintiff.

*Parker, Simmons & Snow,* for appellee.

The elements of negligence and liability causing this injury are not disputed or contested except one point, and that is that the city did not build this bridge and had not exercised ownership over it. And the defendant undertakes to escape liability on the theory that a municipality is not required to keep in repair a bridge situated within the street, and used constantly and generally by the public for a great many years, if such bridge was not built by the municipality and not situated at the intersection of the streets. The appellant states the question to be decided by this appeal, in their brief, as follows:

"The principal question is whether, where a footbridge is constructed by some private person not at a public crossing, without the authority of the city over a public drainway in a street between the sidewalk and the traveled way in the street, and has been used for many years by persons in passing from the traveled way in the street to the side-

walk, the city may be held, as for negligence in failing to maintain and keep said bridge in a good state of repair, to a person who is attempting to use such bridge in the nighttime and is injured by reason of a defect which has existed in such bridge for a long period of time."

The above contention fully outlines the disputed question in this case, and there being practically no dispute as to the facts, issue may be joined on the above statement of appellant and this case be disposed of as a pure question of law.

In discussing the question here; that is, the necessity of the city having constructed or repaired the bridges in question before any liability for the condition thereof may be chargeable against the city, a distinction should be made between those cases wherein a dangerous condition has existed outside of a regular designated and legally dedicated street, and those cases wherein an unsafe condition has existed within the boundaries of an established street.

In those cases where a bridge or other portion of a passage way, is outside of the boundaries of a duly opened and recognized street, and the question as to whether or not a municipality is required to keep the same in repair is in issue; then one of the questions first to be answered, is whether or not such passageway is in fact a public highway. And in answering this question it is usually mainly important to know whether or not the public or municipal authorities have accepted the said passageway sufficiently to constitute it a public way. And the acts of building bridges, repairing bridges, etc., is of prime importance in proving official recognition of the way as a public way, and this evidence is frequently decisive of the question to be decided.

But in those cases where it is admitted that the bridge or other object is within the boundaries of a duly authorized and recognized street, the act of acceptance need not be proved in the way of establishing the public nature of the passageway and the duty of the municipality to

maintain the same; and the only portion of the history of such bridge that is material is to prove that the bridge was unsafe for the use that it was being put to by the public generally for such a length of time as will serve as notice to the proper authorities of its unsafety and the need of repairs. That when any portion of a street, from end to end and side to side, has been in constant and general use of the public for a long time, it is the duty of the municipality to keep such portion of the street reasonably safe for travel without regard to who first built the same.

In support of this contention we call the court's attention to the following authorities: *Furnell* v. *St. Paul,* 20 Minn. 117; *Flora* v. *Nancy,* 26 N. E. 649; *Colby* v. *Beaver Dam,* 34 Wis. 285; *Saulsbury* v. *Village of Ithaca,* 46 Am. Rep. 122; *Fuller* v. *Jackson,* 46 N. W. 721; *McKnight* v. *Seattle,* 81 Pac. 998; *Lombar* v. *East Towas,* 48 N. W. 947; *Bell* v. *Henderson,* 74 S. W. 206; *Village of Ponca* v. *Crawford,* 8 A. S. R. 144; *Klein* v. *City of Dallas,* 7 S. W. 91, 71 Tex. 280; *Hutchins* v. *Inhabitants of Sullivan,* 2 Am. Negligence 805; *Requa* v. *City of Rochester,* 6 Am. Rep. 55; *Joilet* v. *Verley,* 85 Am. Dec. 342; *Com.* v. *Charleston,* 11 Am. Dec. 161; *Green* v. *Bridge Creek,* 20 Am. Rep. 18.

Two of these cases, the first and the last, were based upon bridges built outside of a recognized street or highway and the language used had reference to this kind of a situation. In the first case the defendant was held liable, for reasons therein set out, because of its negligence in not keeping the walk in repair. But the language used therein with reference to the duty of municipalities applied to bridges not within the public highway.

In the last case, *Green* v. *Bridge Creek,* 20 Am. Rep. 18, the court used this language: "This bridge was built by volunteers, without any authority from the defendants, and at least ten rods distance from any public highway. Were the bridge erected within the limits of the highway by private individuals, there would be much reason for holding that the town was bound to adopt it as a part of

the highway and keep it in repair or remove it from the highway altogether  .  .  .  Had the bridge where the injury was received been upon a public highway which the town was bound to keep in a safe and proper condition, the liability would be enforced."

The second case referred to was a criminal prosecution against a town, and the defense was set up that the bridge in question was across a navigable stream; to bridge which was unlawful, and therefore the town could not be required to build or maintain the same, and this contention was sustained. There would have been a different question if some one had been injured while using this street, and bridge, if the same was in a recognized street, and suit had been brought against the municipality. Such was the case of *Houfe* v. *The Town of Fulton*, 17 Am. Rep. 463.. In this last case the defendant set up the fact that the bridge in question was across a navigable stream and therefore the repairing thereof could not be charged to the city. But the sufficiency of this defense was not permitted, and the defendant was held liable.

The text quoted by appellant in 4 R. C. L., does not stop with the quotation shown above, but the same volume and on the same page, in explanation of the above statement or in completion of the law covering the question there being discussed, the following language is used: "So, too, after a bridge erected by a volunteer becomes the property of a municipality and is allowed to remain for years in a highway where it is needed, such municipality is under obligations to keep the bridge in repair."

The only case which has come to our notice that suggests a different holding, as to whether or not it is the duty of a city to maintain its streets reasonably safe for the traveling public without regard to who built the bridge causing the injury is the case of *Crawford* v. *City of Griffin*, 39 S. E. 988, and this case by reason of its peculiar facts involves to some extent different rules of liability. Our court in commenting on this case, in *Hardin* v. *City of Corinth*, says: "It is shown that the bridge was built solely

for the owner of abutting property, in hauling the manure into his garden, and that the plaintiff was the servant in the household of Mr. Mills. It was not shown in that case that it was a public bridge, or that the city had anything to do with it."

With regard to the right of the abutting property owner to build a bridge like that 4 R. C. L., at page 144, uses this language: "It follows as a consequence of the existence of this easement that an abutting owner has a right to construct a driveway or other suitable approach in front of his premises, from his land to the traveled part of the highway, if done in such a way as not to interfere with the rights of the public."

And it would seem that if such a bridge was built by an individual, and the servant of such abutting owner was injured while using the same for the purpose of the builder, then, it might be that the duty to maintain with reasonable safety all parts of a street for the benefit of the traveling public would not be involved.

Also the following rule is announced in 4 R. C. L. at page 371: "Moreover the way need only be made reasonably safe in view of those events which may naturally be expected to arise as incidents to its proper use by the traveling public."

It would require a case based upon the same set of facts before it can be said that the Crawford case was probably correctly decided. And in no event can it be said that this case holds that a municipality may be relieved of its duty to the general public to maintain its streets with reasonable safety, by showing that the street, or some part thereof, had been constructed by a volunteer. The safety of the street is the duty placed upon the municipality, and the method by which the same is rendered unsafe is immaterial.

It seems that it is hard to get away from the idea that pedestrians may cross a street at a point between the intersections of streets. It was this idea that first decided the case of *Hardin* v. *City of Corinth,* and it was the ques-

tion most strongly pressed in the case now before the court.
In fact the controversy in this case upon the law as stated
by the appellant all but abandons the contention that the
origin of the bridge is any matter of concern or defense in
this case. For in their brief they say: "If this bridge had
been located at a street intersection over which pedestrians
were required to go, or if it had been located in the trav-
eled way of the street used by vehicles, the city would prop-
erly be held liable for defects therein, because such defcts
in the bridge would render the street or crossway *per se*
unsafe.

In answer to this contention, it is only necessary to quote
from the opinion of *Hardin* v. *City of Corinth,* 105 Miss.
99: "There is usually, in cities of the size of Corinth no
reason why a pedestrian should not cross the streets else-
where than at the intersections of streets, and when a
city builds a bridge for the use of pedestrians, and thereby
invites them to use the same, we can see no sound reason
why the city is not under obligation to keep the bridge in
reasonable repair, to insure the safety of all persons right-
fully using the same."

In the case of *Stainback* v. *Meridian,* 79 Miss. 447, there
is an entirely different case from the one at bar. In that
case the city had torn away a bridge and was then build-
ing a new one. Planks were placed over this stream for
the convenience of the employees in hauling the rock being
used. Barricades were placed to warn the public against
the use of the street by day and red light by night. The
planks in question were placed by the employees of the
city, under such circumstances as made their acts the acts
of the city, and were perhaps in line with the sidewalk.
There was in that case no question about the location of
the bridge or who first built the same. It would be going
entirely too far to hold that a continuation of same use
of these planks in spite of the manifest appearances of a
bridge being built and the warnings placed by the city,
could be construed as an invitation for such use.

It seems that the requirement of the law to keep that portion of a street constantly and generally used reasonably safe for such use, to the extent of spending enough money to occasionally repair a ten dollar bridge brings to their minds imaginary hardships incident to the liability that might arise in some case different to the one before the court. But in this case the travel has been too constant and the way too well defined and its existence too long recognized to require the application of the law to a different set of facts. The case now before the court is based upon the accuracy of the following instruction granted the plaintiff, to-wit: "The court charges the jury that if you find from a preponderance of the evidence that the bridge in question was in that portion of the street between the portion used as a sidewalk and that portion usually used by vehicles, and that the bridge had been so situated for a number of years and during this time had been used by the public constantly and generally as a public passageway in the said street, and that said bridge appeared to be a portion of the said street, intended for public use and had so appeared for a number of years, then it became and was the duty of the city of Meridian to maintain the said bridge while being so used in a reasonably safe condition for such use, and if the defendant negligently failed to so maintain the said bridge in a reasonably safe condition for such use, and as a proximate result of such failure the plaintiff was injured, then the defendant is liable for such injury, without regard to who first built the said bridge."

We feel that anything less than the above would be an abridgement of the necessary rights of the traveling public and a denial of an adequate protection of the safety of the ways of travel. We feel that the law has been correctly announced and that simple justice has been done in this case, and that this court will find it consistent with their duty to affirm the judgment rendered therein.

SMITH, C. J., delivered the opinion of the court.

Mrs. Peterson sued the city of Meridian for damages which she claims to have sustained because of falling through a bridge in one of the city's streets, and from a judgment in her favor the city has brought the case to this court.

In the block on Grand avenue, one of the city's streets, between St. Charles and Luke streets, a thickly populated residential district, there is an open ditch or drain several feet deep between the sidewalk and the traveled way, across which, and not at street intersections, are several small bridges constructed more than twenty years ago by some unknown person or persons without the authority or consent of the city. These bridges are used by the public in crossing from the sidewalk to the traveled way of the street, the principal use thereof seeming to be made by persons desiring ingress and egress to and from the street and private property abutting thereon. The block along a part of which this ditch extends is an ordinary city block, with proper street crossings at each end thereof. The city has not taken or exercised any acts of ownership over any of these bridges.

On the occasion in question, the appellee, while crossing one of these bridges, fell through a hole therein caused by the removal of one of the planks with which the bridge was floored, and was injured. This hole had existed in the bridge for considerable length of time. This bridge, it will be observed, is not in the traveled way of either the street or sidewalk, and is not necessary for the convenient use of either.

One of the assignments of error brings in review the refusal of the court below.to direct a verdict for the city and the question presented thereby is, Was the city charged with the duty of keeping this bridge in repair?

A municipality is "not required to maintain bridges or crossings over gutters or ditches made for draining the streets at other places than the regular public cross-

ings or street intersections" (2 Elliott, Roads and Streets [3d Ed.] section 800), but when a municipality constructs a bridge over a gutter or ditch for draining its streets at places therein other than street intersections, thereby inviting the public to use the same in crossing the street, such bridge must be kept in such reasonable repair by the municipality as not to endanger persons crossing it (*Hardin* v. *Corinth,* 105 Miss. 99, 62 So. 6).

An abutting property owner has the right to construct a bridge over a ditch in a street in front of his premises in order to obtain access thereto from the street, provided it is constructed in such way as not to interfere with the rights of the public, 13 R. C. L., p. 144, but when such a bridge is constructed by an abutting owner, the municipality is under no obligation to maintain or repair it, unless it is of utility to and used by the general public. There must be both public user and public utility to fix liability on a municipality to repair such a bridge. 9 Corpus Juris, 423; 4 Am. & Eng. Enc. L. (2d Ed.), 920; 2 Elliott, Roads and Streets (3d Ed.), section 33; *Crawford* v. *Griffin,* 113 Ga. 562, 38 S. E. 988; *Rex* v. *West Riding of Yorkshire,* 2 East, 342, 102 Reprint, 399; *Reg.* v. *Southampton,* L. R. 19 Q. B. D., 591; *Rex* v. *Surrey,* 2 Camp. 454.

Whether the utility and the amount and character of the user are sufficient to cast upon the municipality the duty of repairing such a bridge are questions of fact usually for the determination of the jury, but here it is so manifest that the bridge in question is of little public utility that a jury should not be allowed to find otherwise. There is no necessity for the general public to use the bridge in order to cross the street, and its use for that purpose adds little, if anything, to the convenience of the public, for suitable crossings exist at the street intersections. For all practical purposes the use of the bridge serves the convenience only of persons desiring ingress and egress to and from the street and private property abutting thereon in the vicinity of the bridge.

The court below should have directed a verdict for the appellant and rendered a judgment accordingly.

Reversed, and judgment here for the appellant.

*Reversed.*